An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-742-2
NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

STATE OF NORTH CAROLINA

v.

YOSHEIKA CHARMAINE SMITH

Cabarrus County
Nos. 09 CRS 7222-24, 704463,
709818, 710308

Appeal by Defendant from judgment entered 7 March 2013 by Judge Tanya T. Wallace in Cabarrus County Superior Court. Heard in the Court of Appeals 21 November 2013. Unpublished opinion filed 4 February 2014. Petition for discretionary review allowed by the North Carolina Supreme Court for remand to this Court for reconsideration 12 June 2014.

> *Attorney General Roy Cooper, by Assistant Attorneys General Thomas E. Kelly and Joseph L. Hyde, for the State.*
>
> *Amanda S. Zimmer for Defendant.*

STEPHENS, Judge.

*Procedural History*

This opinion is the second filed by this panel in Defendant Yosheika Charmaine Smith's appeal from the revocation of her

probation. On 24 August 2009, Defendant was indicted for two counts of possession with intent to sell cocaine, and one count each of selling cocaine, delivering cocaine, and selling or delivering cocaine near a playground. On 24 February 2011, pursuant to a plea agreement with the State, Defendant entered an *Alford* plea to those charges and to three counts of driving with a revoked license. Pursuant to the agreement, the State dismissed five other charges pending against Defendant, including speeding, failure to wear a seatbelt, and driving while license revoked. The trial court entered a consolidated judgment which imposed a suspended prison sentence of 29 to 44 months and placed Defendant on supervised probation for 24 months.[1]

A violation report filed on 28 November 2012 alleged three violations of the conditions of Defendant's probation, each of which Defendant admitted at a March 2013 hearing. After finding that Defendant had "violated her supervised probation in each and every way cited[,]" on 7 March 2013, the trial court entered

---

[1] Less than five months later, Defendant's probation officer filed a report alleging that Defendant had violated four conditions of her probation. On 1 December 2011, after finding that Defendant committed three of the alleged violations, the trial court modified Defendant's probation, found her in contempt, and ordered her to serve a thirty-day jail sentence.

judgment revoking Defendant's probation and activating her suspended sentence. From that judgment, Defendant appealed, arguing that the trial court (1) lacked jurisdiction to revoke her probation for selling or delivering cocaine near a playground because the underlying indictment on that charge was fatally defective and (2) abused its discretion by revoking her probation. On 11 July 2013, Defendant filed a motion for appropriate relief ("MAR") pursuant to N.C. Gen. Stat. § 15A-1415, again raising the indictment issue and asking that her sentence for the sale or delivery of cocaine near a playground be vacated. In a unanimous, unpublished opinion, we held that Defendant's attack on the validity of the underlying judgment against her was properly before us, citing this Court's decision in *State v. Pennell*, __ N.C. App. __, 746 S.E.2d 431 (2013), and further concluded that the challenged indictment was fatally flawed. *State v. Smith*, __ N.C. App. __, 757 S.E.2d 523 (2014) (unpublished), *available at* 2014 N.C. App. LEXIS 140. As a result, we vacated both Defendant's original and probation revocation judgments and remanded for resentencing. Because the indictment issue was addressed and resolved in the opinion, we dismissed Defendant's MAR.

By order entered 12 June 2014, the North Carolina Supreme Court allowed the State's petition for discretionary review for the limited purpose of remanding to this Court for reconsideration in light of its decision in *State v. Pennell*, __ N.C. __, 758 S.E.2d __ (June 12, 2014). By order of the Chief Judge entered 16 June 2014, this panel was reconvened to review the order of the Supreme Court. On the same date, Defendant filed in this Court a motion to reconsider her 11 July 2013 MAR. The State filed its response to Defendant's motion to reconsider her MAR on 26 June 2014.

*Discussion*

In *Pennell*, our Supreme Court held

> that a defendant may not challenge the jurisdiction over the original conviction in an appeal from the order revoking his probation and activating his sentence. The proper procedure through which [a] defendant may challenge the facial validity of the original indictment is by filing a motion for appropriate relief under N.C. [Gen. Stat.] § 15A-1415(b) or petitioning for a writ of *habeas corpus*.

*Id.* at __, __ S.E.2d at __. Defendant has filed a motion asking this Court to reconsider her MAR. In its response, the State contends that Defendant is essentially asking this Court to rehear her MAR and argues we lack the authority to do so because our Appellate Rules prohibit us from "entertain[ing] petitions

for rehearing in criminal actions." N.C.R. App. P. 31(g). We agree.

We are not, however, persuaded by the State's contention that, because the State only "sought review of this Court's opinion in *Smith*, contending this Court erred in relying on [the opinion of this Court in] *Pennell*[,] . . . [and] did not seek review of this Court's disposition of Defendant's MAR[,]" our Supreme Court's remand of the case for reconsideration in light of *Pennell* "does not embrace the disposition of the MAR." As noted *supra*, the issue addressed by our Supreme Court in *Pennell* was "the proper procedure through which [a] defendant may challenge the facial validity of the original indictment" on appeal from the revocation of probation and activation of the original sentence. *Pennell*, __ N.C. at __, __ S.E.2d at __. By filing an MAR along with her direct appeal, Defendant's appellate counsel presented this panel two routes by which to reach the merits of her challenge to the facial validity of the original indictment in her case, and we relied on the then-binding precedent of *Pennell* in selecting the proper route under which to proceed. Our Supreme Court has now clarified the law and directed us to reconsider this very point.

Further, as the State correctly notes, a panel of this Court may, upon motion of a party or upon its own motion, change its previous ruling "if the court determines that its former ruling was clearly erroneous." *N.C. Nat'l Bank v. Virginia Carolina Builders*, 307 N.C. 563, 567, 299 S.E.2d 629, 632 (1983). Under our Supreme Court's decision in *Pennell*, our previous decision in this matter, to address Defendant's argument on direct appeal rather than by consideration of the merits of her MAR, was clearly erroneous. Accordingly, we address the issue raised in Defendant's MAR, to wit, that the trial court lacked jurisdiction to revoke her probation and activate her sentence on the charge of selling or delivering cocaine near a playground because the indictment for that offense is fatally defective.

At the time Defendant was charged, certain drug offenses committed on "property that is a public park or within 1,000 feet of the boundary of real property that is a public park" constituted Class E felonies. N.C. Gen. Stat. § 90-95(e)(10) (2007). Defendant contends that the indictment on this charge "fails to allege [that] the sale or delivery took place in a public park and fails [to name] the individual to which the

controlled substance was sold or delivered." We agree that the indictment was fatally defective.

Superior court criminal jurisdiction cannot rest upon an invalid indictment. "[O]ur Constitution requires a bill of indictment, unless waived, for all criminal actions originating in the Superior Court, and a valid bill is necessary to vest the court with authority to determine the question of guilt or innocence." *State v. Bissette*, 250 N.C. 514, 515, 108 S.E.2d 858, 859 (1959). It is well settled that an indictment for the sale or delivery of a controlled substance must name the person to whom the defendant allegedly sold or delivered the narcotics or, in the alternative, allege that the name of the person is unknown. *State v. Bennett*, 280 N.C. 167, 168, 185 S.E.2d 147, 148 (1971); *Bissette*, 250 N.C. at 517, 108 S.E.2d at 861 ("Where a sale is prohibited, it is necessary, for a conviction, to allege in the bill of indictment the name of the person to whom the sale was made or that his name is unknown, unless some statute eliminates that requirement.").

Here, Defendant was charged with selling or delivering cocaine near a playground as follows:

> The [j]urors for the State upon their oath present that on or about the date of the offense shown and in the county named above, the defendant named above unlawfully,

> willfully, and feloniously did commit an offense under North Carolina General Statute 90-95(a)(1) of sell and deliver, a controlled substance [c]ocaine, within 1,000 feet of the real property boundary of Concord Chase Apartment's play ground [sic].

The indictment alleges neither the name of the person to whom Defendant allegedly sold cocaine nor that the name of the person is unknown. "Lacking either of these allegations, the indictment is fatally defective and cannot sustain the judgment in that case." *State v. Long*, 14 N.C. App. 508, 510, 188 S.E.2d 690, 691 (1972); *see also State v. Calvino*, 179 N.C. App. 219, 221-22, 632 S.E.2d 839, 842 (2006).[2] We therefore vacate the 24 February 2011 judgment which was entered upon Defendant's consolidated convictions.

---

[2] In addition, there is no indication in the indictment or the record as to whether the "Concord Chase Apartment's play ground [sic]" is a public park under section 90-95(e)(10). A previous version of the statute provided that "[a]ny person 21 years of age or older who commits an offense under [N.C. Gen. Stat. §] 90-95(a)(1) on property that is a playground in a public park or within 300 feet of the boundary of real property that is a playground in a public park shall be punished as a Class E felon." N.C. Gen. Stat. § 90-95(e)(10)(2005). The term "playground" was defined as "any outdoor facility . . . intended for recreation open to the public." *Id.* However, the General Assembly later amended section 90-95(e)(10) to remove the word "playground" and the sentence defining "playground." *See* 2007 N.C. Sess. Laws ch. 375, §§ 1-2. In any event, having determined that the indictment is flawed on other grounds, we need not resolve this question.

We must also vacate the 7 March 2013 judgment revoking Defendant's probation. A "trial judge is required by the Structured Sentencing Act to enter judgment on a sentence for the most serious offense in a consolidated judgment . . . ." *State v. Tucker*, 357 N.C. 633, 637, 588 S.E.2d 853, 855 (2003); *see also* N.C. Gen. Stat. § 15A-1340.15(b) (2013) ("The judgment shall contain a sentence disposition specified for the class of offense and prior record level of the most serious offense, and its minimum sentence of imprisonment shall be within the ranges specified for that class of offense and prior record level . . . ."). Here, Defendant's conviction for the sale or delivery of cocaine near a playground pursuant to N.C. Gen. Stat. § 90-95(e)(10) was a Class E felony, the most serious offense of those consolidated for judgment by the trial court. Thus, Defendant's sentence was entered upon her conviction for the sale or delivery of cocaine near a playground, a conviction based upon a fatally flawed indictment. Such a sentence is void and a nullity, *see McClure v. State*, 267 N.C. 212, 215, 148 S.E.2d 15, 17-18 (1966), and a void sentence cannot be activated. Accordingly, we also vacate the judgment revoking Defendant's probation.

Finally, we remand this case to the superior court for

disposition on all of the remaining original charges against Defendant. As noted *supra*, Defendant's sentence was the result of a plea agreement, a crucial part of which was Defendant's plea of guilty to the charge of selling or delivering cocaine near a playground. Defendant has repudiated that portion of the agreement. "Although a plea agreement occurs in the context of a criminal proceeding, it remains contractual in nature. A plea agreement will be valid if both sides voluntarily and knowingly fulfill every aspect of the bargain." *State v. Rico*, 218 N.C. App. 109, 122, 720 S.E.2d 801, 809 (Steelman, J., dissenting in part) (citations and internal quotation marks omitted), *reversed in part per curiam for the reasons stated in the dissent*, 366 N.C. 327, 734 S.E.2d 571 (2012). "[A d]efendant cannot repudiate [a plea agreement] in part without repudiating the whole." *Id.* In such cases, the entire plea agreement must be set aside and the case remanded for disposition on all of the charges affected by the plea agreement. *Id.*

VACATED and REMANDED.

Judges GEER and ERVIN concur.

Report per Rule 30(e).